# SUPREME COURT.

## In the Matter of The Atlantic Mutual Life Insurance Company.

*Insolvent life insurance company — appointment of receiver — application by receiver for instructions — power of the court over the actuary's report.*

By the eighth section of the act of 1869, entitled "An act to authorize life insurance companies to make special deposits of securities in the insurance department and to authorize the superintendent to require special reports, and also to provide for the appointment of receivers of such depositing companies in certain cases" (*Laws of* 1869, *chap,* 902), it is provided that if the actuary reports the corporation *solvent,* and "the actuary's report shall be confirmed by the court," the receiver *may* continue the corporate business by receiving and collecting premiums, discharging obligations, &c., &c. When, however, the actuary reports the company *insolvent* the receiver is commanded to "notify the superintendent thereof, who *shall,* with the consent and advice of the treasurer of the state, and in such manner as the said receiver, superintendent and treasurer, or a majority of them, shall determine, sell and convert such securities into money," &c. On a motion by receiver for instructions upon the actuary's report showing the company to be insolvent:

*Held,* that in such case the court has no power over the actuary's report. Although, in case the actuary's report sustains the solvency of the company, it *must* be confirmed by the court before the business can be continued as the statute directs; such confirmation is not required when the actuary's report is adverse to the company's solvency.

*Albany Special Term, March,* 1878.

Motion by the receiver, Mr. Edward Newcomb, upon the report of the actuary, Mr. Charles R. Knowles, for instructions.

*Mr. N. C. Moak,* for receiver.

*Mr. S. W. Rosendale,* for attorney-general.

Matter of the Atlantic Mutual Life Insurance Company.

*Mr. Wm. Barnes*, for company.

*Mr. George L. Stedman*, for policyholders.

### OPINION No. 1.

WESTBROOK, *J.* — Pursuant to chapter 902 of the Laws of 1869, upon the application of the attorney-general (to whom a report had been made by the superintendent of insurance as required by said act), it having, on such application, been made to "appear to the satisfaction" of this court "that the assets and funds" of the Atlantic Mutual Life Insurance Company were "not sufficient to justify the further continuance of the business of insuring lives, granting annuities and incurring new obligations as authorized by its charter." Edward Newcomb was appointed the receiver "of all the assets and credits of said company."

In conformity also with said act, the receiver, after duly qualifying as such, appointed, with the approval of the superintendent of insurance, an actuary, Charles R. Knowles, who has made his report as required by statute. By such report the liabilities of the company are stated at $1,173,650.99, and the assets $1,133,068.40. The capital of the company was $110,000, and according to the actuary's report the deficiency as to policyholders is $40,564.59, and as to stockholders $150,564.59.

Upon this report the receiver has asked the instructions of the court. Assuming the correctness of the report of the actuary there can only be one direction given, and that is that the receiver must proceed as the statute directs. The eighth section of the act under which these proceedings are conducted expressly provides: "And in case the said report of the said actuary shall show that the said securities, assets, credits and premiums are not sufficient under the laws of this state to pay all the policies, annuities and other obligations of said company as they may mature by the terms thereof, and the legal costs and expenses of said receivership, the said

receiver *shall* notify the said superintendent thereof, and the superintendent *shall*, with the advice and consent of the treasurer of the state, and in such manner as the said receiver, superintendent and treasurer, or a majority of them, shall determine, sell and convert said securities into money, and the proceeds of such sale or sales *shall* be paid to the said receiver, on his giving his receipt to said superintendent, and *shall* be applied by said receiver as follows: To the payment of the registered policyholders of said company in proportion to the net value of their policies respectively, and to the registered annuities of said company in proportion to the then present value of their respective annuities as estimated by the legal standard for valuing life insurance and annuity obligations within this state. The surplus derived from such sale or sales, if any there be after the payments last above-mentioned, with all the other assets of the said company, shall be then applied to the payment of all the just debts of said company incurred in the conducting and carrying on its lawful business."

It is impossible to misunderstand these plain words. The court conceding the correctness of the actuary's report can give to its officer no other direction than that prescribed by the statute law. If, however, it is claimed that the actuary has made errors in his report, has undervalued assets, or adopted, in the making of his report, wrong legal principles, has the court any power to correct or amend it? This is certainly a very grave question, for whilst on the one hand a very plausible argument in favor of the power so to do can be made, based upon the general supervising prerogative of the court, another and very cogent one against it can be urged founded upon the language of the statute. When and how the assets of a corporation in the hands of a receiver shall be disposed of is certainly a subject within the legislative control. Has not that been declared in the provision above quoted? Action for the conversion of assets into money is to be taken, not when the court orders or approves but upon the report of

the actuary showing the inability of the company to meet its obligations as they mature. The language is mandatory, and, perhaps, made more so by the previous part of the same section which has not been quoted. That portion marks out the course to be pursued when the actuary's report shows that the assets of the company "are sufficient, under the laws of this state, to pay all the policies, annuities and other obligations of said company as they may mature by the terms thereof, and the legal costs and expenses incident to the business;" but such action can only be taken "if said actuary's report shall be confirmed by the court." In short, the language of section 8 of chapter 902 of the Laws of 1869, to enable the receiver to continue the business of the company as in said act provided, requires the actuary's report of its ability to meet its engagement, and a confirmation thereof by the court; whilst to turn its assets into money by the joint action of the superintendent of insurance, the treasurer and the receiver, requires only the report of the actuary of its inability to meet its obligations. Can it be safely argued that when the same section of a law provides for one course of action only upon the concurring judgment of the actuary and of the court, and also for another, which is its direct opposite, upon the opinion of the former alone, that the omission to require the court to agree with him in the second case means nothing? What, too, it may with propriety be asked, shall be done when the actuary pronounces the company's assets unequal to the legal demands upon them, and the court differs in its conclusion upon the same point? Can the receiver proceed to collect the accruing premiums on the policies, and do what the first part of the section requires, when such part makes the right of the receiver so to act dependent upon the agreement of actuary and court as to the sufficiency of assets to extinguish liabilities? It is true, that under the same section a difficulty may arise as to the course to be pursued when the report of the actuary declares that the company is solvent as to its policyholders, and the court differs from him in judg-

ment ; but should, for that reason, the section be so construed as to create a second dilemma in a certain contingency, when the words used do not require such a construction thereof ? Is it not, upon the whole, safer and better to follow the literal words, and hold that the business of the company shall be continued, provided the actuary reports that its assets are sufficient for that purpose, and the court confirms such report, but when the actuary reports them insufficient, that then their conversion into money and their division must proceed as the law directs ? Did not the legislature. intend primarily the protection of policyholders ? To that end, has it not required the concurring judgment of actuary and court before they shall be compelled to pay further premiums, whilst, to secure an immediate distribution of assets among policyholders and creditors, the judgment of the actuary as to the insufficiency of the assets to meet obligations is alone required ? . This view of the statute is not obnoxious to the objection that too grave consequences are made to depend upon the actuary's report, because at a ·prior date in the history of the company t'₁e superintendent of insurance and the court had determined that the company could not continue business with safety; and when, therefore, the assets are distributed upon the actuary's report, there are, in addition, the judgments of the superintendent of insurance and the court as to the propriety of the course.

It is very apparent that the true construction of the statute we are considering is very doubtful. Upon the present argument, the right of the court to review, set aside, alter or correct the actuary's report seemed to be conceded. I have not felt myself .at liberty to reach the same conclusion without a formal argument upon the difficult questions it involves, and which have been herein referred to. As, however, it was earnestly maintained on behalf of the company, and some of its policyholders, that the actuary's report is in many respects erroneous, and grave and large interests are confessedly at stake, I deem it safer to send .the report back to the actuary

for revision, and correction if he shall find any errors. It will be well for him to hear all parties who are interested, and, after doing so, to signify to the court his final conclusions by a supplementary report. When this shall have been done, counsel will be heard further upon the case as then presented.

## OPINION No. 2.

WESTBROOK, *J.*— The actuary appointed under chapter 902 of the Laws of 1869, to whom his own report had been sent for revision and correction, if any, in his judgment, was needed, has, after a full hearing of all the parties interested, made a supplemental report in which he adheres to his conclusion that the above-named corporation is insolvent. The questions now submitted are, 1st. What power has the court over the report; and, 2d. Is the report substantially accurate?

When the matter came before the court upon the original report the views which were then entertained were fully stated, without, however, irrevocably expressing a conclusion. No argument has been presented which has in any degree shaken the reasoning in the opinion then written, and to which reference is now made. It will be sufficient for the court now to state in the briefest possible manner the reasons for concluding that upon this proceeding it has no power over the report.

It is a proceeding, not an action, founded upon a statute which marks out a line of conduct to be pursued. By the eighth section of the act (*chap.* 902, *Laws of* 1869), if the actuary reports the corporation solvent, and "the actuary's report shall be confirmed by the court," the receiver may continue the corporate business by receiving and collecting premiums, discharging obligations, and doing what that section provides. When, however (see same section), the actuary reports the company insolvent, the court is called upon to do nothing, but the receiver is commanded ("shall") to "notify the superintendent thereof," who in turn is commanded (word "shall" is again used, and continued through the whole sec-

tion) "with the consent and advice of the treasurer of the state, and in such manner as the said receiver, superintendent and treasurer or a majority of them shall determine, sell and convert such securities into money," &c. Why, it may be asked, does the statute expressly require, in case the actuary's report sustains the solvency of the company, that it shall be confirmed by the court before future premiums upon policies can be collected, and the business continued as the statute directs; and why does it omit to require such confirmation when the actuary's report is adverse to the company's solvency? Was this omission undesigned or is it significant of legislative intent? It would be a poor compliment to the legislative department for the judicial to assume that it was purposeless. When the actuary made his report, the condition of the company had already been pronounced, by the superintendent of insurance and the court, unsafe. Before policyholders were thereafter to be subjected to further hazards in paying premiums upon their policies, the law required the concurring judgments of actuary and court. If, however, the actuary's report is also against the safety and solvency of the company, then without any further judicial action its assets must be administered under the statute. Human judgments are, of course, fallible; but it is not unreasonable to say that a company should cease to exist and its assets be distributed when these public functionaries — the superintendent of insurance, the actuary and a judge of the supreme court — have declared the unsafety of its longer continuance in being.

It may also be said that the condition of the association would be anomalous if the court refuses to confirm the actuary's report. What would the policyholders be compelled to do? Actuary and court must both agree by the express words of the act that the company is solvent before they can be compelled to pay premiums, and, therefore, if this report is unconfirmed, all action must be suspended. The actuary is an officer independent of the court. He acts upon

his own judgment and oath, and it would, it seems to me, be against the whole spirit and policy of the law for the court to compel him to report against his own clear convictions, and it is powerless to remove him and to appoint another.

For these reasons, very hastily penned, both because of the great pressure of official duty and the need of prompt action, the receiver is instructed to follow the statute and act in conformity with the eighth section of the law referred to.

We have not deemed it necessary to go over the detailed objections made to the actuary's report, and have already intimated that the court has no power over it. Justice, however, to a faithful, honest and intelligent officer induces us to state that we find no substantial error committed by him.